STRUCK & IRWIN FUEL COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*September 18—October 13, 1936.*

For the appellants there were briefs by *Quarles, Spence & Quarles,* attorneys, and *Kenneth Grubb* and *Jefferson Burrus* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

Fritz, J.   The interlocutory award challenged in this action was made by the Industrial Commission upon an examiner's report that the defendant Johnson, while in the employment of the plaintiff, Struck & Irwin Fuel Company, sustained total temporary disability on October 12, 1935, for which he was entitled to be paid compensation, computed on the basis of average weekly earnings of $28.75.   The only ultimate issue at the time of making the award and now on this appeal is what amount shall be held to be Johnson's average weekly earnings, as a basis for computing his compensation for the disability.   The examiner, and the commission, in making the award, concluded that, in as much (1) as Johnson had not worked at least two hundred seventy days in the employment of the Struck & Irwin Fuel Company in the year preceding the day of his injury (so as to come within the terms prescribed in par. (a) of sec. 102.11 (1), Stats.) ; and (2) as there was no proof that any employee of the same class had worked on that many days in that year in the same or a neighboring place (so as to bring the case within the provisions of par. (b) of sec. 102.11 (1), Stats.) ; and (3) as there existed no collective bargaining law, industrial code regulation, or adopted schedule, applicable to the particular employment by which the normal full-time number of hours of employment per week was prescribed, and there was no employer who had adopted a definite schedule of normal full-time number of hours during which persons may be employed in his employment (so as to bring the case within par. (c) of sec. 102.11 (1), Stats.), Johnson was entitled to have his average weekly earnings computed by applying the following formula prescribed in par. (d) of that section, to wit:

"...  The average weekly wage for such employee shall be the product of the highest number of hours worked in any week within the year preceding his injury (but in no case less than thirty) times his average hourly earnings."

Accordingly, the examiner, after finding that the highest number of hours worked by Johnson in any week of seven consecutive days in the year preceding October 12, 1935, was fifty-seven and one-half hours, which he worked in but the one period of seven days from September 28 to October 4, 1935, multiplied that number of hours by his average hourly earnings of fifty cents per hour, and thereupon concluded that the product, viz., $28.75, constituted Johnson's average weekly earnings, and upon that basis the commission computed and made the award herein, which is now under review. In their complaint and on this appeal, the plaintiffs contend that the examiner and the commission acted without and in excess of their powers in several respects, but as we have concluded that the formula prescribed in par. (d) of sec. 102.11 (1), Stats., is not applicable in the determination of Johnson's average weekly earnings, it is not necessary to pass upon the alleged lack of power in all of those respects.

Under the provisions of sub. (1) of sec. 102.43, Stats., temporary compensation for total disability is to be "seventy per cent of the *average weekly earnings* during such total disability." Therefore, in order to compute the amount to be paid as compensation, it is necessary to first determine what are the employee's "average weekly earnings." In sec. 102.11 (1), Stats.[1] (which, as re-enacted in 1935 is

---

[1] *"Earnings, method of computation.* (1) The average weekly earnings for temporary disability shall be taken at not less than ten dollars and fifty cents nor more than thirty dollars and for permanent disability and death shall be taken at not less than twenty dollars nor more than thirty dollars. Between said limits the average weekly earnings shall be determined as follows:

"(a) If the employee has worked in the employment in which he was working at the time of the injury, whether for the same employer or not, on at least two hundred seventy days in the year immediately preceding his injury, his average weekly earnings shall consist of six times the average daily wage which he earned in such employment on the days when so employed.

"(b) If the employee has not worked in such employment during at least two hundred and seventy days, his average weekly earn-

copied in the margin so far as here material), the legislature has undertaken to prescribe the "method of computation."

ings shall consist of six times the average daily wage which an employee of the same class working on at least two hundred and seventy days in the same or a similar employment in the same or a neighboring place shall have earned in such employment on the days when so employed.

"(c) However, if by a collective-bargaining agreement, law or industrial code regulation applicable to the particular employment, the normal full time number of hours of employment per week is prescribed, or if an employer has adopted a definite schedule of normal full time number of hours during which persons may be employed in his employment and notice of such schedule has been posted in such manner as to afford his employees reasonable notice of such schedule and proof of such posting is filed with the industrial commission and such schedule has been maintained for a period of at least ninety working days after the filing of such proof, the average weekly earnings of an employee in such employment shall consist of such normal full time number of hours (but in no case less than thirty) times his average hourly earnings, and paragraphs (a) and (b) shall not apply.

"(d) If none of the methods of determining the average weekly earnings of the employee as provided in paragraphs (a), (b) and (c) can be applied because there was no week in which the employee or any employee of the same class worked within the hours provided in paragraphs (a), (b) and (c), the average weekly wage for such employee shall be the product of the highest number of hours worked in any week within the year preceding his injury (but in no case less than thirty) times his average hourly earnings.

"(e) In determining average daily wage under paragraphs (a) and (b), no day during which an employee has worked less than eight hours shall be taken into consideration unless by agreement or custom a lesser number of hours' work constitutes the full day's service for such day. Average daily wage shall in no case be taken as less than six times the average hourly earnings.

"(f) Subject to the maximum limitation, the average weekly earnings computed under paragraphs (a) and (c) shall in no case be taken at less than the actual average weekly earnings for the weeks the employee was employed during the year immediately preceding his injury.

"(g) For the purposes of paragraphs (c) and (d), the average hourly earnings of an employee shall be the average of such employee's hourly earnings during the four weeks immediately preceding his injury; or, if the injured employee has not worked in the employment in which he was injured for at least sixty hours during such four-week period, then his average hourly earnings shall be the average of the hourly earnings prevailing in the same or similar employment for such four-week period.

"(h) . . . ."

It is conceded that Johnson's case does not fall under either par. (a) or (b) of that statute, because he had not worked in the employment, in which he was engaged when he was injured, on at least two hundred seventy days in the year immediately preceding his injury, and it did not appear that any employee of the same class had worked at least that number of days in the same or a similar employment in the same or a neighboring place. Likewise, par. (c) of sec. 102.11 (1), Stats., was not applicable in the making of that determination, because, as to that particular employment, there was no collective-bargaining agreement, law, or industrial code regulation by which the normal full-time hours of employment per week were prescribed, and no schedule of such normal full-time number of hours had been adopted or posted by any employer as provided in that paragraph.

Par. (d) of sec. 102.11 (1), Stats. 1935, under which the examiner and commission concluded that Johnson's case fell, provides that the formula, therein prescribed as quoted above, shall be applicable,—

"If none of the methods of determining the average weekly earnings of the employee as provided in paragraphs (a), (b) and (c) can be applied because there was no week in which the employee or any employee of the same class worked within the hours provided in paragraphs (a), (b) and (c). . . ."

Under that provision, the formula prescribed in "(d)" is to become applicable only because there was *no week in which* the employee or any employee of the same class worked *within the hours provided in pars. (a), (b), and (c)*. Manifestly, by thus attempting to limit the applicability of the formula prescribed in par. (d) to cases in which pars. (a), (b), and (c) are not applicable, because there was *no week* in which an employee worked *within the hours* provided in pars. (a), (b), and (c), the entire provision, in so far as

pars. (a) and (b) are concerned, can never become operative for the reason that there is no provision in either par. (a) or (b) which relates to the hours of work in a week or, for that matter, in any other period of time. The only possible occasion that can arise for the application of the formula prescribed in par. (d), in so far as its applicability is expressly made dependent upon the sole condition "because there was no week in which the employee or any employee of the same class worked within the hours provided in paragraphs (a), (b), and (c)," is when par. (c) would otherwise be applicable, either because of the existence of a collective-bargaining agreement, law, or industrial code regulation applicable to that particular employment by which "the normal full-time number of hours of employment per week" are prescribed, or possibly because of the existence of such an adopted schedule of such hours as is contemplated under that par. (c). However, in an attempt to interpret that par. (d) so as to apparently increase the number of instances in which that formula should be considered applicable, under the terms and conditions stated in par. (d), the Industrial Commission in a pamphlet entitled "Interpretations of Wage Basis Provisions Under Wisconsin Compensation Act," states:

"(1) (d) The words 'within the hours' is interpreted to mean 'within the time' as provided in (a) and (b). Paragraphs (a) and (b) do not mention hours. It seems obvious, therefore, that to give a working interpretation to these paragraphs in connection with (d), the construction must.be that 'within the hours' has reference to work 'on at least 270 days' in the test year."

That construction is obviously erroneous. The plain and unambiguous words "within the hours," as they are embodied in par. (d), cannot reasonably be interpreted to mean "within the time," or be held to refer to work "on at least 270 days," because under the very wording of par. (d) those

words "within the hours" are used solely in respect to *"no week in which* the employee or any employee of the same class worked within the hours provided in paragraphs (a), (b), and (c)." The test which is thus clearly and definitely expressed in that provision is manifestly solely whether there was "no week" in which the employee worked within the provided hours. Likewise, by thus expressly limiting that test as to whether an employee worked "within the hours" of any "week *in which* the employee or any employee . . . worked," the legislative meaning thus definitely expressed precludes the construction, asserted by the commission, that the clause "within the hours" has reference to work "on at least 270 days" in the test year. On the contrary, the test thus prescribed is not as to a year, or as to two hundred seventy days, but only as to a week. However, regardless of the commission's error in its attempted interpretation of that conditional provision in par. (d), the actual question is whether, even if either par. (a), (b), or (c) were otherwise applicable in Johnson's case, it is possible to find that there exists, in respect to his case, the particular state of facts which, under the sole condition prescribed in par. (d), must exist in order to render the formula prescribed thereunder applicable. That cannot be found because, as there are no hours of work provided in par. (a) or (b), there is no basis because of which it is possible to find that there was no week in which Johnson or any employee of this same class worked within the hours provided in those paragraphs.

As neither the formula stated in par. (d) nor in any of the other paragraphs of sec. 102.11 (1), Stats. 1935, is applicable, it follows that there is no statutory provision which prescribes a definite method or formula for determining Johnson's average weekly earnings. However, he is entitled to have those earnings computed in some way as a basis for his compensation. Methods for doing that, when none of the pre-

scribed statutory formulas were applicable, were considered in *Rice's Case,* 229 Mass. 325, 118 N. E. 674; *Robichaud's Case* (Mass.), 198 N. E. 510; *Braggs Quarry v. Smith,* 161 Tenn. 682, 33 S. W. (2d) 87, 34 S. W. (2d) 714; *Utah Fuel Co. v. Industrial Comm. of Utah,* 59 Utah, 46, 201 Pac. 1034. The determination must be based upon the employee's actual earnings during a preceding period sufficiently long to include the usual seasonal fluctuations in hours of employment, wage rates, etc., to reasonably and fairly establish his true earning capacity. Ordinarily a preceding period of twelve months would probably be sufficiently long to afford a fair and reasonable basis, because that period would usually include all of such seasonal fluctuations. At present, the only statutory limitation, in respect to the amount determined to be the average weekly earning for temporary compensation, is that,—

"The average weekly earnings for temporary disability shall be taken at not less than ten dollars and fifty cents nor more than thirty dollars." Sec. 102.11 (1), Stats.

Prior to the amendment of that section in 1935, there was a provision in par. (c) thereof (which formerly provided the method for determining the average weekly earnings when the former pars. (a) and (b) were not applicable) that it should be taken at such sum as "shall reasonably represent the average annual earning capacity of the injured employee at the time of the injury." In passing upon awards made under those provisions, we said in *Allis-Chalmers Mfg. Co. v. Industrial Comm.* 215 Wis. 616, 255 N. W. 887 :

"Compensation must be based upon the earning capacity of the injured workman in the employment and as he was employed at the time of his injury."

And in that case, as well as in *Glancy Malleable Iron Co. v. Industrial Comm.* 216 Wis. 615, 622, 258 N. W. 445, and *Hammann v. Industrial Comm.* 216 Wis. 572, 257 N. W.

612, we held that awards of compensation, which the commission considered authorized under sec. 102.11 (1) (c), Stats. 1933, but which were in fact computed on a wage basis that was in excess of the actual average earning capacity at the time of injury, were excessive and invalid. Compensation must bear some reasonable relation to the loss which the injured employee will probably sustain, and, therefore, must be based upon the amount which reasonably represents his average weekly earning capacity at the time of his injury. *Presque Isle v. Industrial Comm.* 200 Wis. 446, 228 N. W. 589; *State Road Comm. v. Industrial Comm.* 56 Utah, 252, 190 Pac. 544. A statutory provision purporting or construed to authorize the making of an award that would require the payment of compensation at an unreasonable, arbitrary, and capricious rate, would be in violation of the spirit of the Workmen's Compensation Act, and would give rise to grave questions as to the constitutionality thereof. *Marshall v. Andrew F. Mahony Co.* (C. C. A.) 56 Fed. (2d) 74, 76; *Allis-Chalmers Mfg. Co. v. Industrial Comm., supra.*

In the case at bar, Johnson's probable loss was not computed on the basis of his average weekly earning capacity, and his average weekly earnings were certainly considerably less than the amount arrived at by multiplying the maximum weekly hours that he worked during only one extraordinarily busy period of seven consecutive days, by his average wage of fifty cents per hour. All told, during the year preceding his injury he worked for the Struck & Irwin Fuel Company on only one hundred ten days, with his daily hours fluctuating from four to ten hours, and in no other period of seven consecutive days than from September 28 to October 4, 1935, did he work as many as fifty-seven and one-half hours. On the contrary, his average number of hours of work per week was considerably below fifty-seven and one-half hours, and his total earnings on those one hundred ten days during that

year were only $442.75. In addition, he earned $88 while working on twenty-two days for other employers, and he also earned either $50 or $450 gathering and selling junk. Consequently, his total earnings for that year were not over $960.75, and his weekly average earnings, on the basis of fifty working weeks in the year, did not exceed $19.22. Consequently, as the sum of $28.75, which was used as the amount of Johnson's average weekly earnings in computing his compensation, does not bear any reasonable relation to his actual earning capacity and probable wage loss, but is, on the contrary, clearly excessive and unreasonable, the award based thereon cannot be sustained.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment vacating the award and remanding the record to the Industrial Commission for further proceedings in accordance with the opinion.